CASE 45—PETITION EQUITY—MARCH 18.

# Thomas v. Clark County National Bank.

APPEAL FROM CLARK CIRCUIT COURT.

1. FINAL ORDER—ATTACHMENT SUIT—ORDER DIRECTING GARNISHEE
TO PAY.—In an attachment suit an order entered by the court
directing the numerous garnishees to pay to the plaintiff the sums
owing by them to the defendant, and adjudging that they should
be discharged *pro tanto* from the payment to the defendant of
such indebtedness to the extent thus paid under the judgment,
was a final order, and binding upon one who had previously come
into the action and filed his answer claiming the attached funds.

BECKNER & JOUETT FOR APPELLANT.

(Brief not in Record.)

BUCKNER & TAYLOR FOR APPELLEE.

1. A judgment in favor of the plaintiff in an attachment suit against
the garnishee is a merger *pro tanto* of the plaintiff's demand
against the defendant to that extent, and is necessarily a final
order. Coburn v. Currans, 1 Bush, 242; Sessions v. Stephens,
1 Florida, 233; King v. Vance, 46 Ind., 246; Roberts v. Drinkard,
3 Met., 309; 8 Am. & Eng. Ency. of Law, page 1252 and notes.

2. A final decree is one which determines and disposes of the whole
merits of the cause, or a branch of it, which is separate and
distinct from the other parts of the case, and reserving no further
questions or directions for future determination; (Teaff v. Hewitt,
1 Ohio State, 511); under this test the judgment in this case
was final, because it was completely determined by the judgment,
the amount of Clay's debt to appellee, and the amount of each
garnishee's debt to Clay, and adjudged that such garnishee should
pay the same to appellee, and should be discharged *pro tanto*
from his obligation to Clay; there was nothing further possible
to be done in the action. Jackson v. St. Louis, &c. R. R. Co.,
89 Mo., 104; Burlington, &c. R. R. Co. v. Chicago Lumber Co.,
18 Neb., 303; Clark v. Foxworthy, 14 Neb., 241.

GEORGE B. NELSON OF COUNSEL ON SAME SIDE.

.JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

In August, 1890, appellee instituted this suit in equity against the defendant, M. H. Clay, and sued out general attachments against his property and at the same time sought, by garnishees served upon divers persons, to attach in their hands money alleged to be due and owing by them to Clay and to have same appropriated by a judgment of the court to the payment of its debt.

About the same time similar suits were instituted by the Winchester Bank and the Citizens' National Bank against the same party, the action of the Winchester Bank being a little prior in point of time to the others. The general attachments in each of these suits were levied upon all the tangible property in the possession of defendant Clay, consisting of planing mill, lumber, horses, wagons, etc.

It was evident that all the tangible property would be consumed by the debts of the Winchester Bank, and the Citizens' Bank and appellee were vigilant in attempting to reach debts due defendant Clay, which were not covered by the general attachments.

During the pendency of this litigation appellant Thomas intervened as a claimant of the property, upon the ground that he was the trustee for the benefit of M. H. Clay's creditors and held title to the property attached under a voluntary assignment of Clay, who was his son-in-law. Subsequently, and at the same term, he filed an answer and cross petition, in which he alleged that he was a partner of Clay in the firm of M. H. Clay & Co.; that the property levied on and the debts attached in the action

Thomas v. Clark County National Bank.

were at the time of the levy and garnishment the property of the firm of M. H. Clay & Co., and that he had a lien upon same for the payment of the debts due by the firm, and prayed that such lien be adjudged him and that the attachments sued out be discharged.

Appellee denied the alleged partnership and that appellant had any interest in the property levied on or in the indebtedness due M. H. Clay & Co., which had been garnisheed by it.

At the February term, 1891, after proof taken, and upon a regular order of submission, the court entered a judgment sustaining appellee's attachment garnisheeing the funds in the hands of the various persons who had been brought before the court by the garnishees which appellee had had served upon them, and thereafter orders were taken directing each of these garnishees to pay to the appellee the amounts admitted as due and owing to the defendant Clay; the judgment further providing that upon such payments being made the garnishees should be discharged, *pro tanto*, of so much of their respective indebtedness to the defendant Clay, and also providing that appellee might have execution for the amounts against the respective garnishees; and the record shows that in some instances the amount due by the garnishees became a matter of litigation between them and the appellee herein.

Appellant excepted to this judgment and prayed an appeal to the Court of Appeals, which was granted, but seems never to have been prosecuted.

[ 22 ]

In February, 1895, the case was filed away, with leave
to redocket, and subsequently, in February, 1896, on mo-
tion of appellant, the case was again put upon the docket,
when he offered to file an amended petition setting up all
the facts which had been recited in his original petition
to be made a party, and the additional fact that he, as
a partner in the firm of M. H. Clay & Co., had in the
meantime paid off a large amount of indebtedness due
by that firm, and sought to have his claim to the funds
which had been adjudged appellee upon its garnishees
relitigated and determined, this court having in the
*interim*, in the case of the Winchester Bank, held that he
was a member of the firm of M. H. Clay & Co., reversing
the judgment of the lower court.

The chancellor overruled the appellant's motion to file
this amended petition, upon the ground that the orders
previously made in the case directing the garnishees to
pay money over to appellee were final orders, after the
expiration of the term at which they were entered, and it
is from this judgment that this appeal is prosecuted.

The only question presented by the appeal is, had the
lower court any control over the funds which had been,
under its orders, paid over to the appellee by the various
garnishees during the pendency of the action, after the
expiration of the term of court at which they were en-
tered; or, in other words, was the judgment sustaining
the attachment of appellee against the funds in the hands
of the garnishees such final determination of the rights
of the parties in the action that an appeal would lie?

It is stoutly contended by appellant that nothing had

been decided by the judgment sustaining the attachment and directing the garnishees to pay over to appellee the amounts in their hands due the firm of M. H. Clay & Co., which in any wise affected the rights of the present appellant; that so far as his claim to the funds in contest was concerned, it was an open question, never having been determined in any way, and that appellee had acquired by the judgment sustaining the attachments only such rights therein as belonged to M. H. Clay.

The question as to what constitutes a final order is often perplexing and difficult to determine, and has been the source of contention and litigation throughout the entire history of our jurisprudence. Blackstone says: "A final judgment either determines an action or decides some matter litigated by the parties, or operates to invest some right in such manner as to put it out of the power of the court making the order after the expiration of the term." Black on Judgments, volume 1, section 41, says: "A decree is final which completely and finally disposes of some branch or part of the case which is separate and distinct from other parts of the case. . . . A final decree is not necessarily the last decree rendered by which all proceedings in the case are terminated, but it is a decree which determines the substantial merits of the controversy." Freeman, in his work on judgments, volume 1, section 2, says: "The rule is well settled and of long standing that a judgment or decree, to be final within the meaning of that term, must terminate the litigation between the parties on the merits of the case, so that if affirmed the lower court would have nothing to do

but execute the judgment rendered. (Section 24.) A decree is none the less final because some future orders of the court may become necessary to carry it into effect; nor because some independent branch of the case is reserved for further consideration. (Section 26.) When a decree determines the rights of property and directs it to be given to the complainer or to be sold for his benefit, he is entitled to have the decree carried into immediate effect, and it is final." The Am. & Eng. Enc. of Prac., volume 2, page 53, defines a final judgment to be "one which leaves nothing to be judiciously decided between the parties in the trial court, and it must include all necessary parties on the merits and dispose of the subject matter of the controversy; but to constitute a final appealable judgment and determination of the rights of the parties in the particular suit only is requisite," and citing a large number of authorities.

In this action the court sustained the attachment as to the persons who had been summoned as garnishees and directed that they pay to the appellee the various sums of money adjudged to be due by them to the defendant Clay, and that they should be discharged, *pro tanto*, from the payment to Clay of such indebtedness to the extent paid under the judgment. This judgment against the garnishees, upon the ground that they were indebted to the defendant Clay, was a discharge of the indebtedness of the defendant to the appellee to that extent, and thereafter the garnishees were discharged from liability to the defendant or to his assigns.

In adjudging the funds attached to be the property of

Clay and directing payment to the appellee, in an action to which appellant had voluntarily become a party, and in which he sought in his pleading to have these identical funds applied to the payment of debts on which he was liable, was a final determination of appellant's right thereto. After the entry of this judgment no other order was necessary or could be entered, and nothing else remained to be done. Appellant's only remedy was by appeal.

A judgment upon a process of attachment stands upon the same footing as any other judgment until reversed on appeal, and bars all other actions on the same cause of action (see Am. & Eng. Enc., volume 8, 1252, and cases there cited). One of the chief objects of appellee in the institution of this suit was to reach and subject to the payment of its debt the identical funds which the court finally adjudged it, and appellant voluntarily became a party to the action, resisting the claim of appellee; and, when it was finally determined against his contention, failed to prosecute any appeal therefrom. And to allow him now to reopen and relitigate this question because of the opinion of this court, rendered long subsequently thereto in another case, would, reverse what has become the settled rule of construction.

Wherefore the judgment is affirmed.